I think we're ready to hear our first case, which is Diggs v. Niagara Mohawk Power Corporation. May I, Your Honor? May it please the Court, Respondents' Counsel, in my 30 years of practicing civil rights law, it seems harder and harder to defeat summary judgment. If this case of racial discrimination cannot get to a jury, then perhaps no case can unless there is a racial epithet involved. Of course, then, there is the doctrine of stray remarks. But there is nothing stray in the facts of this case. After all the evidence was in, certainly by the time of arbitration, the company knew without doubt that of the five employees disciplined for misuse of company-heavy equipment, only one employee was terminated, the African-American, while the white employees were given warnings or, in the worst case, a three-day suspension. Do you agree that remorse can be used as a factor by the employer in considering what the appropriate punishment is? Yes, I would agree. However, there is no evidence in this record of a non-hearsay nature that the four comparators showed any particular remorse. And with respect to remorse — Is there evidence that they lied about their use of the equipment? Well, one of the employees, employee number three, as we described in our brief, not only committed a far more egregious offense than the plaintiff in that he took the equipment for an entire week, but he covered up the name of the company equipment, the name of the company's logo, and replaced it on the vehicle to hide it. When he was being investigated on that, is there evidence that he lied? There is evidence that he was interrogated for two days, just like my client. However, there is no information in the record as to the comparators whether or not they were telling the truth. So there's — well, so there's no evidence that they lied? There's no evidence that they lied. By contrast, there is evidence that Mr. Diggs lied. There is evidence that what Mr. Diggs did was the first time admitting taking — Why isn't that a sufficient difference? Because there are, in a case involving comparators, under the decisions of this Court, that is certainly a factor to be taken into account, as Your Honor asked me, and I admitted that it was. However, it is one of many factors that would have to be considered in this particular case in comparing the plaintiff with the four employees. So — You said that there was no — aren't the written reminders admissible here? That is, these notations to each of the other comparators, at least three of them? The other comparators, several of them had prior instances, numerous prior instances of misconduct, which was not the case with the plaintiff. I believe what the Court is referring to is the fact that these people were given letters of reprimand. Are you referring to memos to each employee at 222, 224, and 226? Yes. That outline why it is that they are being reprimanded in the circumstances and also indicate that they at least admitted their misconduct? Well, I don't see there's any evidence in those memos of forthrightness, Your Honor, and in one of the cases, as I indicated — confronted that they had engaged in the misconduct. I don't believe that was the case in employee number three, Your Honor. The man was interrogated for two days, which was the case with the plaintiff here. The plaintiff in his first interrogation admitted taking the backhoe home but did not admit using it for 10 minutes on a stump. But in the case of employee number three, who had engaged not only in hiding the company logo but in stealing the company fuel card in order to use the company's fuel for these activities — and that individual, by the way, was allowed to make restitution in an amount of $3,000, whereas in this case, approximately $3,000. In this case, there would have been virtually no loss to the company from these activities. Mr. Diggs' restitution, if any, would be de minimis. But the — at least in my reading of the record, I didn't find anything in those reports that indicated particular honesty. Would you then address the Collins issue? Yes. The Collins issue, Your Honor, is a case where the employee punched his supervisor in the case — in the face and there were no comparators. And the Collins case involves a situation where that very fact was dispositive. The finding of the arbitrator that, in fact, that had occurred was dispositive of the Title VII case. But this year, the arbitrator, as I understand it, went a step further, which was to look at the comparators as well and consider the argument of disparate treatment. I don't — what the arbitrator said in his decision, and using almost his exact language, is that he felt the issue of leniency was for the company. So in his view, if the other four employees were treated more leniently than the plaintiff, that would be not something that he should address. He wasn't looking at the Title VII issues in which the race of the comparators is an important factor. Numerous decisions of this Court on — Well, he says, I thus find the grievance, dishonesty, and evasive attitude at investigatory meetings with — this is at A-151 — distinguishes his case from those of the other comparators. Honesty, contrition, and the potential for rehabilitation do make a difference in penalty. Yes. There was no indication that the plaintiff in this case had any prior disciplinary history, unlike all the other cases that were cited in the brief when the comparisons were rejected. The arbitrator said very clearly that he believed the employer had a reasonable basis for discharging the employee. I don't disagree with that. They have a reasonable basis for discharging all the four comparators. But the question of whether the four comparators should have been treated more leniently than the plaintiff was one which the arbitrator said he specifically was not deciding. And he wasn't addressing Title VII issues. Well, I believe under the Alexander Gardner Denver decision that — and we've briefed that extensively. But yes, Your Honor, he was not addressing Title VII issues. And under the decisions of the Supreme Court, the arbitrator applying a contract principle of just cause does not foreclose Title VII litigation. And I would say particularly so where you have such dramatic comparator evidence. The evidence before the arbitrator is the same as what's in this record, merely someone from the Human Resources Department saying they were all truthful. But he did, as my colleague pointed out, say that the four other employees are in a sense are distinguishable. Their cases are distinguishable because of the finding of evasiveness. So why wouldn't Collins, our precedent suggests that that attenuates the evidence of a causal link here? Because Collins had a very dramatic one-fact-dispositive scenario. I would suggest to this Court that Mr. Diggs' dishonesty did not rise to a substantial level to justify treating the four white employees with leniency, which the arbitrator said he didn't have jurisdiction to consider, in comparison to this employee, who this was his first time and his act of misconduct was much less severe than any of those. I think we'd have to agree that the disciplinary records establish that. Was he, you did not put in the collective bargaining agreement in this record, is that right? Your Honor, I was not the attorney. I'm not blaming you, I was just. No, it's not part of the record, but the arbitrator in his decision does, as most arbitrators do, typically recite what the issue is for his determination, which was. Was Mr. Diggs required to proceed in this way? That is, did, was there something about the agreement that required him before or in tandem with filing with the New York State Division of Human Rights making or filing this grievance or having, asking the union to file this grievance on his behalf? There's nothing in the record that would indicate that he was required to do that. From what I've seen in the record, the Title VII case was completely separate from the grievance arbitration, which is often the case. The arbitrator posed the question as to whether there was just cause for termination, and if so, what the penalty would be, and that's what he decided on a contract grievance basis and consistent with the Supreme Court precedent that does not foreclose the Title VII action. Thank you, Your Honors. May it please the Court. Your Honors, we respectfully submit that the different arguments that the appellant is trying to advance in front of this Court find no support in the record evidence in this in cases of this nature where there's been a prior evidentiary hearing. First, it appears that the appellant has argued that Judge Sharpe gave perclusive effect to the arbitrator's award. That simply is not the case. A review of Judge Sharpe's decision confirms that he properly applied this Court's standards as developed in Collins. Second, Judge Sharpe did review the record evidence and properly concluded that the plaintiff could not survive summary judgment independent of the arbitrator's award. He found that the plaintiff was not similarly situated with the comparators under the standards that have been developed in the Second Circuit, and he found that the plaintiff had presented insufficient evidence, no evidence really, to show his claim of discrimination. What's the evidence with respect to the difference in the potential for rehabilitation? In terms of, with respect to Mr. Diggs? Yeah. I think that Mr., the arbitrator recognized that Mr. Diggs lied repeatedly during the hearing. In fact, the arbitrator found that he was not forthcoming even during the arbitration hearing. And, in fact, the arbitrator recognized, as I think the courts have recognized, that contrition, honesty, remorse is, in fact, significant for an employer. Can you cite a case that says that in the Second Circuit? Can you cite a Second Circuit case where we've said that? I believe, Your Honor, was on the panel in Gannon v. UPS, and I believe that in that decision, there was a recognition that honesty would be a factor in determining if comparators were similarly situated. I also know in Anderson v. National Grid, Judge Bianco, not the Second Circuit, but several district courts have recognized . . . Eastern. Eastern District. Eastern District, have recognized that being honest, accepting responsibility for misconduct is, in fact, central to the employment relationship and would, in fact, Your Honor, be an important factor in determining whether a second chance might be warranted. And under Collins, this Court held that a just cause finding in an evidentiary hearing is highly probative of the absence of discrimination. Does it matter under Collins that the employee is required, is or is not required to go through a grievance procedure before filing a complaint with a Division of Human Rights, whatever that division might be? In this case, Your Honor, there is no requirement that an employee go through the grievance process. You had asked the question about the labor contract. That is something that Mr. Diggs pursued, along with the union, voluntarily, the same way that he decided to file a complaint with the New York State Division of Human Rights, in which he misrepresented the facts surrounding his use of equipment and what had happened during the investigatory proceeding. And in that same complaint, he raised the same arguments regarding disparate treatment, the same comparators. And the division conducted an extensive fact-finding conference, including the questioning of witnesses with respect to the disparate treatment claim, before the division found that— Those are all reasons maybe for affirming in this case, but would you answer my question, does it matter whether or not the employee is required to proceed with the grievance procedure under the collective bargaining agreement for purposes of determining whether Collins applies? I would think that would be a factor. And why is that? Because the question then would be whether all of the issues would be something that would be having to be developed outside of the Title VII context. Here, there was a voluntary decision to go forward in three different forums. And in each of these forums, Mr. Diggs was not able to carry his burden of proof. As a matter of fact, in the arbitration, the company had the burden of proving not that there was a reason for his discipline, but that there was just cause for his termination. And implicit in the just cause standard is that the employer has looked at its policies, work rules, and has applied them in an even-handed, non-discriminatory manner. And that's what the arbitrator held in this case. And Judge Sharp, in looking at the record evidence before him, similarly found distinguishing significant distinguishing characteristics so as to find that the plaintiff had not carried his burden of showing that he was similarly situated in all material respects. What about the argument that perhaps accepting your position with regard to most of the comparators, that at least with regard to Contito, it's hard to say that the record of the misconduct coupled with the evasive actions in that particular situation don't render him sufficiently comparable to the plaintiff? I mean, there was, as I understand the record, correct me if I'm misunderstanding, but first there was a taking of substantial amount of equipment, a digger truck, backhoe, a trailer used essentially to clear land for a week, there's a masking of the logo so he won't be noticed on the road, and he's using the company's fuel card so he's essentially stealing money at the same time. And if this was limited, Your Honor, to the use of the equipment or the misuse of the equipment, then that might be a comparable situation. But in fact, Mr. Contento acknowledged his wrongdoing, was apologetic for his wrongdoing, as counsel indicated, you know, made restitution, and there's no evidence that he tried to conceal the misconduct after, once the company had engaged in its investigation. And in fact, in the company's standards of conduct, one of the grounds for dismissal is employees who obstruct or interfere are not forthcoming in a company investigation. That's separate and apart from the underlying misconduct, and again, I made reference, Your Honor, to the Eastern District decision, and Anderson, same policy, same situation where the employee who had engaged in the misconduct and who was arguing that he was subject to disparate treatment could not show that the other employees had obstructed or interfered is, you know, a critical and sufficient distinguishing characteristic. The other thing that is significant in this case is that we have different decision-makers, and Your Honor, I may have misstated, I think, the Gannon decision. Well, that's what I'm looking at. Yeah. I think in the Gannon decision, the court held as a matter of law that the fact that there are different decision-makers involved is sufficient to find, you know, that employees who engaged in misconduct are not similarly situated. Here it is absolutely undisputed that the people who are involved in Mr. Diggs' termination were not involved in any of those other cases. I know that there's been a suggestion that one of the supervisors was the same. There's no support in the record for that, and in fact, it's not true. So it's not really about the people that is the specific supervisors so much as the disciplinary regime, and I take it what you're really arguing is that it's the same, well, maybe you're not arguing this, isn't it the same disciplinary regime at play here? I think, Your Honor, at its core, Title VII and other types of discrimination cases, what is at issue is the intent of the decision-maker, and the courts have developed various tests to determine how it is that you might infer intent. None of those circumstances are present here. The thing that's critical is what was going through the mind of the individuals who made the discharge decision in this case, and they reasonably believed that Mr. Diggs had violated several important work rules, but even more significantly, that he lied to them face-to-face when they were questioning him on two or more occasions. This is a public utility that has employees who work with live gas and high-energy electricity. It's important that employees be trustworthy, reliable, and it's certainly reasonable for an appropriate penalty, and it's not for, you know, the Second Circuit has recognized on multiple occasions that, you know, again, the plaintiff has the burden of proving discrimination in each of the elements of that, and in this case, the plaintiff didn't do that, and although Judge Sharp didn't have to get to this point, the plaintiff also cannot establish pretext. The reasons for Mr. Diggs' discharge were clearly stated on January 8th when they met with him. It was not only the misuse of the equipment, but it was the lying on December 20th and the lying on January 8th, the continued lying that was important to their decision. And that is absolutely, it was proven to be true in the arbitration. It's not even in the dispute here. Mr. Diggs was not honest on multiple occasions, and that's the reason why he was terminated. Thank you. Your Honors, I want to address the issue of intent. The contrary to counsel's position, at the time before the arbitration when they decided to proceed with termination, the company had evidence conclusively that there was a disparity of treatment between the four white employees and the African-American employee and decided to move forward with termination anyway. It was a company decision, and you cannot hide behind the decisions of each individual supervisor as if they were unconnected with one another. The disciplinary regime sought termination. Mr. Contento, there's nothing in the record that he was at all apologetic. He was ordered to make restitution. He didn't do so voluntarily. And would the record support the conclusion that counsel would ask you to reach that Mr. Contento is somehow a more reliable employee than Mr. Diggs? I do not think the evidence supports that conclusion, and I believe there are issues of fact as to whether that would be case. And yes, honesty is a factor. We've discussed that, but I think this case is very analogous to the last chance agreement cases, which Judge Kearse had used the word rehabilitation. Many cases in which the white employees were given last chance agreements and many chances, whereas the African-American was hit the very first time, that has been grounds for findings of discrimination in the past. With respect to the New York State Division of Human Rights, there's nothing in the record to conclude as to what was before the division. And the division's findings have never been preclusive of a Title VII action. Part of the entire regime is that despite the administrative finding, you're entitled to go to the court and have your case heard. The comparatives do not have to be identical. The question is, were they under the same policies they were? Did they commit the same types of offenses? The other four committed even far more serious offenses than Mr. Diggs, and he was singled out for termination. And in the arbitration hearing, the company's position was really no different than what's in the record before you. It was the hearsay statement of a manager of HR saying that these people are all honest because I basically asked around the company. If I use that type of evidence as a plaintiff in this case, I'm sure the district court would remind me quite forcefully that hearsay is not admissible and does not obtain or defeat summary judgment. Thank you very much. Thank you both. We'll take the matter under advisement.